NOT YET SCHEDULED FOR ORAL ARGUMENT

Nos. 25-5266 & 25-5267

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,
PLAINTIFF-APPELLEE,

v.

OFFICE OF MANAGEMENT AND BUDGET, *et al.*,
DEFENDANTS-APPELLANTS.

PROTECT DEMOCRACY PROJECT,
PLAINTIFF-APPELLEE,

v.

U.S. OFFICE OF MANAGEMENT AND BUDGET, *et al.*,
DEFENDANTS-APPELLANTS.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

# AMICI BRIEF OF THE DISTRICT OF COLUMBIA, MARYLAND, CALIFORNIA, MASSACHUSETTS, ARIZONA, COLORADO, CONNECTICUT, DELAWARE, HAWAII, ILLINOIS, MAINE, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, NEW YORK, NORTH CAROLINA, OREGON, WASHINGTON, AND WISCONSIN IN SUPPORT OF PLAINTIFFS-APPELLEES


ANTHONY G. BROWN
Attorney General for Maryland

JULIA DOYLE
Solicitor General

VIRGINIA A. WILLIAMSON
ADAM KIRSCHNER
MICHAEL DREZNER
Assistant Attorneys General

200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-6584
vwilliamson@oag.maryland.gov

*Additional counsel listed on next page and final signature block*

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

EMMA SIMSON
MITCHELL P. REICH
Senior Counsels to the Attorney General

BRYAN J. LEITCH
Assistant Attorney General

AMBER D. GREENAWAY
Assistant Attorney General

400 6th Street, NW, Suite 8100
Washington, D.C. 20001

(202) 724-5671
amber.greenaway@dc.gov

*Counsel for Amici States*

ROB BONTA
Attorney General for California

MICHAEL L. NEWMAN
Senior Assistant Attorney General

IRINA TRASOVAN
Supervising Deputy Attorney General

LEE SHERMAN
Supervising Deputy Attorney General

300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6202
Lee.Sherman@doj.ca.gov

ANDREA JOY CAMPBELL
Attorney General for Massachusetts

DAVID KRAVITZ
State Solicitor

ANNA LUMELSKY
Deputy State Solicitor

KATHERINE DIRKS
Chief State Trial Counsel

VANESSA ARSLANIAN
State Trial Counsel

1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned certifies as follows:

A. *Parties and amici*.— All parties and amici appearing before the district court and in this Court are listed in the Certificates filed by the parties on July 23, 2025, August 18, 2025, and August 22, 2025, respectively. In addition, the following amici subsequently appeared in this case: Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Washington, and Wisconsin.

B. *Rulings under review*.— The rulings under review are listed in the Certificates filed by the parties on July 23, 2025, August 18, 2025, and August 22, 2025, respectively.

C. *Related cases*.— All related cases are listed in the Certificates filed by the parties on July 23, 2025, August 18, 2025, and August 22, 2025, respectively

/s/ Amber D. Greenaway
AMBER D. GREENAWAY
*Counsel for Amici Curiae*

## TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF AMICI'S INTEREST ........................1

ARGUMENT ........................................................................................................3

I. Access To Timely Information About OMB's Apportionment Decisions Is Critical To Enabling The States To Assert Their Legal Rights And Prevent Harm. ..........................................................3

II. OMB's Refusal To Provide Timely Apportionment Information Will Make It Difficult For States To Identify And Prevent Unlawful "Pocket Rescissions." ..........................................................13

CONCLUSION ..................................................................................................16

## TABLE OF AUTHORITIES

*Cases*

*Colorado v. U.S. Dep't of Health & Human Servs.*,
788 F. Supp. 3d 277 (D.R.I. 2025) .......... 3

*CREW v. OMB*,
791 F. Supp. 3d 29 (D.D.C. 2025) .......... 15

*Dept. of State v. Aids Vaccine Advoc. Coal.*,
146 S. Ct. 19 (2025) .......... 14

*Maine v. USDA*,
778 F. Supp. 3d 200 (D. Me. 2025) .......... 3

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
785 F. Supp. 3d 68 (D. Md. 2025) .......... 6

*Nat'l Council of Nonprofits v. OMB*,
775 F. Supp. 3d 100 (D.D.C. 2025) .......... 12

*New York v. Trump*,
769 F. Supp. 3d 119 (D.R.I. 2025) .......... 12

*New York v. Trump*,
171 F.4th 1 (1st Cir. 2026) .......... 3

*Rhode Island v. Trump*,
781 F. Supp. 3d 25 (D.R.I. 2025) .......... 3

*Washington v. U.S. Dep't of Transp.*,
792 F. Supp. 3d 1147 (W.D. Wash. 2025) .......... 3

*Woonasquatucket River Watershed Council v. USDA*,
778 F. Supp. 3d 440 (D.R.I. 2025) .......... 12

*Statutes, Rules, and Regulations*

2 U.S.C. § 681 .......... 13

2 U.S.C. § 683 .......... 13

31 U.S.C. § 1513 note .......... 1

Consolidated Appropriations Act, 2022,
Pub. L. No. 117-103, 136 Stat. 491 .......... 1

Consolidated Appropriations Act, 2023,
Pub. L. No. 117-328, 136 Stat. 44591 .......... 1

*Other*

*California v. McMahon*,
No. 25-cv-00329 (D.R.I.) .......... 5

*California v. U.S. Dep't of Transp.*,
No. 3:26-cv-1417 (N.D. Cal.) .......... 5

*California v. Wright*,
No. 2:25-cv-02574 (W.D. Wash.) .......... 3

Continuing the Reduction of the Federal Bureaucracy,
Exec. Order No. 14238, 90 Fed. Reg. 13043 (Mar. 20, 2025) .......... 9

GAO, *Institute of Museum and Library Services—Applicability of the Impoundment Control Act to Reduction of Agency Functions*, B-337375 (June 16, 2025) .......... 11

Jennifer Scholtes, *White House Floats New Funding Trick – And GOP Lawmakers Grimace*, POLITICO (June 20, 2025) .......... 13, 15

Letter from Mark Paoletta, Gen. Counsel, OMB, to Tom Armstrong, Gen. Counsel, GAO (Nov. 16, 2018) .......... 13, 14

Letter from Thomas H. Armstrong, Gen. Counsel, GAO, to Steve Womack, Chair, H. Comm. on the Budget, & John Yarmuth, Ranking Member, H. Comm. on the Budget, *Impoundment Control Act—Withholding of Funds through Their Date of Expiration*, B-330330 (Dec. 10, 2018) .......... 14

*Maryland v. Corp. for Nat'l & Cmty. Serv.*,
No. 25-cv-1363 (D. Md.) .......... 7

Massachusetts v. U.S. Dept. of Agric.,
No. 1:25-cv-13165 (D. Mass.) ........................................................................ 3

*Rhode Island v. Trump*,
No. 25-cv-00128 (D.R.I.) ............................................................................. 9

## GLOSSARY

| | |
|---|---|
| Amici States | Amici Curiae Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Washington, and Wisconsin. |
| CREW | Appellee in No. 25-5266, Citizens for Responsibility and Ethics in Washington |
| ECF | Electronic Court Filing |
| GAO | Government Accountability Office |
| IMLS | Institute of Museum and Library Services |
| OMB | Appellant, Office of Management and Budget |

## INTRODUCTION AND STATEMENT OF AMICI'S INTEREST

In 2022, Congress enacted a statute directing the Office of Management and Budget (OMB) to make its apportionment decisions public in a timely manner so that affected entities and organizations could identify—and, where necessary, put a stop to—the Executive's failures to comply with the appropriations laws. *See* Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, div. E, tit. II, § 204(b), 136 Stat. 49, 257; Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, div. E, tit. II, § 204(1), 136 Stat. 4459, 4667 (2022) (codified at 31 U.S.C. § 1513 notes). Since assuming office, the Trump Administration has done just what Congress sought to prevent. It has repeatedly and unlawfully withheld appropriated funds. And it has often done so in secret: in some cases, failing to announce that it is withholding appropriated funds at all; in others, delaying the announcement until the withholding causes a crisis; and in still other cases, refusing to reveal, even when its efforts to withhold funds are discovered, whether it is OMB or the administering agency that is responsible for the withholding.

Amici States have experienced this problem first-hand. Since last year, the Administration has illegally withheld billions of dollars that Congress appropriated to the States. Among many other examples, the Administration delayed over $6 billion in education funds that it was required by law to make available to the States by July 1, 2025; it withheld tens of millions of dollars intended for state

AmeriCorps programs; it withheld millions more in critical grant funding for public libraries and social services to vulnerable populations; and it withheld and diverted billions more in a persistent effort to significantly cut back or eliminate existing energy and infrastructure programs.

In each instance, OMB's initial refusal to make its apportionment decisions public hindered Amici States' ability to protect their interests and prevent real-world harm. And after the apportionment website was restored as a result of this litigation, it provided critical information that Amici States relied on to identify withholdings, monitor apportionment decisions, and take action to restore funding to which they were legally entitled. As such, Amici States have every reason to expect that similar harms will recur if the district court's decision is overturned and the Administration once again flouts the transparency law that Congress enacted to prevent precisely this problem.

For these reasons, in addition to those set forth in Plaintiffs-Appellees' oppositions, the equities strongly favor affirming the district court's grant of a permanent injunction requiring the Defendants to comply with the disclosure requirements enacted by Congress. The Executive Branch has no valid interest in directly violating federal law by shielding from public scrutiny its final, legally binding decisions about whether and how to apportion federal funds. And Amici States and the public will suffer serious harm if OMB is permitted to withhold

information critical to identifying whether, when, and how the Executive Branch is withholding appropriated funds in violation of the law.

## ARGUMENT

### I. Access To Timely Information About OMB's Apportionment Decisions Is Critical To Enabling The States To Assert Their Legal Rights And Prevent Harm.

Over the past year, the Administration has repeatedly and unlawfully withheld appropriated funds from the States. *See, e.g.*, *Washington v. U.S. Dep't of Transp.*, 792 F. Supp. 3d 1147, 1193-94 (W.D. Wash. 2025); *Colorado v. U.S. Dep't of Health & Human Servs.*, 788 F. Supp. 3d 277, 315 (D.R.I. 2025); *Rhode Island v. Trump*, 781 F. Supp. 3d 25, 55-56 (D.R.I. 2025); *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200, 238 (D. Me. 2025); *New York v. Trump*, 171 F.4th 1, 10 (1st Cir. 2026); *Massachusetts, v. U.S. Dept. of Agric.*, No. 1:25-cv-13165 (D. Mass.) (filed Oct. 28, 2025); *California v. U.S. Dep't of Transp.*, No. 2:25-cv-02574 (W.D. Wash.) (filed Dec. 16, 2025). Prior to the district court's judgment in this case, Amici States' efforts to apprehend whether and in what way appropriated funds were being withheld, and to take timely actions to halt those withholdings, were made appreciably more difficult by OMB's unlawful refusal to disclose its apportionment decisions. And the real-world costs of the Administration's withholdings were likewise made substantially greater by OMB's defiance.

Conversely, since OMB's apportionment website was restored, Amici States have been able to rely on its apportionment data to monitor and address unlawful funding disruptions. When, for example, an Amici State agency notices a persistent delay or lapse in funding which an Amici State expected to receive from a federal agency, Amici States can monitor OMB's apportionment data and compare them with data disclosed by other federal agencies, which in some circumstances might indicate OMB involvement in particular funding disruptions or delays. Using these data, Amici States can also determine whether OMB has failed to timely apportion funds for a particular line item or whether it has apportioned funds for one line item within a lump-sum appropriation but not another. In addition, OMB apportionment data allow Amici States to determine whether OMB has appended unusual footnotes to particular Treasury accounts, which can help Amici States ascertain whether OMB is preventing or delaying the apportionment of a particular budget authority.

Four episodes from the past year illustrate the significant problems Amici States faced before OMB restored its apportionment website, and the vital role that timely, accurate access to apportionment data has played in addressing these problems.

***Delay in Education Funding***. On the afternoon of June 30, 2025, the Department of Education confirmed for the first time that it planned to delay the availability of more than $6 billion in funds that, by law, must be made available to

Amici States by July 1 each year. Compl. ¶ 1, *California v. McMahon*, No. 25-cv-00329 (D.R.I. July 14, 2025), ECF No. 1. These funds are designed to support critical K-12 and adult-education services in every State, including programs to assist English learners and migratory workers, programs that promote and enhance effective classroom instruction, and programs to establish and expand community learning centers. *Id.* ¶¶ 1-2. School districts plan their educational budgets months in advance in reliance on these funds, and they make key staffing and programming decisions in the expectation that they will have access to them by or around July 1. *Id.* ¶¶ 4-5, 14.

Accordingly, when Amici States learned that these critical education funds would be withheld immediately before they were expecting them to be made available, they needed to take drastic steps. School districts canceled essential summer school and afterschool programs, ended teacher training efforts, and halted services designed to make school more accessible for children with special learning needs. *Id.* ¶ 14. Amici States quickly filed suit and sought a preliminary injunction to halt the Administration's unlawful withholding of funding. *Id.* ¶¶ 1-8. Following this litigation and an outcry from the public and members of Congress, the Administration ultimately released the funds. *See* Joint Mot. to Dismiss at 2-3, *id.*, ECF No. 58.

None of this chaos was necessary. The Administration appeared to have made the decision to unlawfully withhold the education funds months earlier: OMB was required to apportion the funds within 30 days of the enactment of the underlying appropriation—that is, by April 15, 2025—and yet it evidently failed to do so. *See* Compl. ¶¶ 7, 146-49, 241-50, *id.* Had Amici States known of OMB's failure to apportion funds at the time—as they would have, if OMB had complied with its statutory obligation to post apportionment decisions within two days—school districts would have had months to prepare for the possible withholding of funding, rather than confronting a crisis immediately before the funding was expected to become available. And Amici States would have had time to take steps to protect their legal interests and potentially prevent the unlawful withholding long before it caused harm.

***Termination of AmeriCorps Funding***. Amici States faced a similar issue in their efforts to preserve funding needed for vital public-service programs. In April 2025, the Administration initiated a campaign to dismantle AmeriCorps, the federal agency for national service and volunteerism. *See Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 77 (D. Md. 2025). As part of that effort, AmeriCorps informed State Service Commissions that it was immediately terminating nearly $400 million in funding for AmeriCorps programs. *Id.* at 86, 113. These programs support volunteers who "help some of the most vulnerable

populations in the country, such as veterans returning from combat, homebound seniors, children with learning disabilities, and people struggling with substance abuse." *Id.* at 77.

Amici States sued, arguing that the Administration's sweeping funding cuts violated several legal restrictions. *Id.* at 78. The District Court for the District of Maryland agreed that the cuts were likely unlawful and entered a preliminary injunction ordering AmeriCorps to reinstate the terminated funding in plaintiff States. *Id.* at 126. It also ordered AmeriCorps to make no significant changes in service delivery without proceeding through notice-and-comment rulemaking, as required in binding appropriations law. *Id.* at 127-28.

But the dismantling of AmeriCorps did not stop. Although AmeriCorps reinstated the terminated funding, Amici States soon discovered that other AmeriCorps funding streams were suddenly being cut off without notice or explanation. This funding included tens of millions of dollars intended for AmeriCorps programs and operations in plaintiff states, including Senior Companion Programs, Foster Grandparent Programs, programs funded with competitive AmeriCorps grants, and State Service Commissions grants. *See* Am. Compl. ¶¶ 10, 203-30, *Maryland v. Corp. for Nat'l & Cmty. Serv.*, No. 25-cv-1363 (D. Md. July 24, 2025), ECF No. 171.

AmeriCorps represented through counsel that *it* had no intention of withholding any funds, but at that point it remained unclear who was responsible for withholding the relevant funds. And at a later status conference held by the court, the Department of Justice asserted that "OMB deliberations on appropriations are privileged," and even asserted that the mere fact of whether AmeriCorps had received funding from OMB was itself privileged information. Status Conf. Tr. 7, 13-14, *id.*, ECF No. 168; *see* Addendum at 1-5.

Without the benefit of the public website, Amici States were left to infer through other sources that OMB was likely the entity responsible for withholding the funds and subsequently added OMB as a defendant seeking an order directing it to apportion the withheld funds. *See* Am. Compl. ¶¶ 202-07, 271-313, ECF No. 171. After OMB complied with the court order to restore the public website and resumed posting apportionment documents, Amici States were able to determine that the funds were likely being withheld pursuant to an undisclosed OMB spend plan. *See* Pl.'s Notice of Suppl. Authority at 1-2, *Corp. for Nat'l & Cmty. Serv.*, No. 25-cv-1363, ECF No. 179. After additional delay, a spend plan was approved and the funds were apportioned and allocated. *See* Def.'s Consent Mot. to Stay Briefing Schedule at 2, *id.*, ECF No. 180.

Had OMB honored its statutory obligation to publish apportionment decisions, Amici States would have known of OMB's failure to apportion funds far

sooner. That would have enabled them to quickly seek relief against OMB, rather than undergo a kafkaesque, weekslong effort to determine who was crippling AmeriCorps' service programs. And it would have prevented significant harm to vital AmeriCorps programs, many of which saw their funding cut throughout this unnecessary period of delay.

***Partial Distributions of IMLS Grants***. A third example comes from the Administration's attempted dismantling of the Institute of Museum and Library Services (IMLS). IMLS is the federal agency charged with "advanc[ing], support[ing], and empower[ing] America's museums, libraries and related organizations through grantmaking, research, and policy development." *Rhode Island*, 781 F. Supp. 3d at 34. Amici States depend on IMLS grants to pay library employees' salaries and to fund important services at libraries and museums, including literacy development, job training, research, and lifelong learning. Compl. ¶¶ 72-86, *Rhode Island v. Trump*, No. 25-cv-00128 (Apr. 4, 2025), ECF No. 1.

In March 2025, the President issued an Executive Order decreeing that IMLS and several other agencies be eliminated to the "maximum extent consistent with applicable law," and that OMB "reject funding requests for [IMLS] to the extent they are inconsistent with this order." Continuing the Reduction of the Federal Bureaucracy, Exec. Order No. 14238, § 2(a), (c), 90 Fed. Reg. 13043, 13043 (Mar. 20, 2025). IMLS followed that order by, among other things, placing the vast

majority of its staff on administrative leave and terminating well over 1,000 grants, many of which had been awarded to Amici States. *Rhode Island*, 781 F. Supp. 3d at 44. In addition, IMLS issued only partial payments of formula grant awards to some state libraries, explaining at the time and in a subsequent declaration that these payments were partial "because IMLS ha[d] not yet received its FY25 apportionment from the Office of Management and Budget." Decl. of Keith E. Sonderling ¶ 9, *Rhode Island*, No. 25-cv-00128, ECF No. 63-1.

Because Amici States lacked any information about OMB's apportionment decisions, they could not determine for certain whether and how OMB was involved in the IMLS funding disruption. Moreover, state libraries could not assess whether the remaining, critically important formula funds were likely ever to be issued—hampering their ability to budget, plan, and spend accordingly. *See, e.g.*, *Rhode Island*, 781 F. Supp. 3d at 52 (describing one state's explanation that "a delay in funding from IMLS will cause" it to "immediately . . . halt services and implement a hiring freeze" (internal quotation marks omitted)).

The District Court for the District of Rhode Island subsequently mitigated that uncertainty by issuing a preliminary injunction that barred the dismantling of IMLS and directed the restoration of agency staffing and of grant funding in plaintiff States. *See* Prelim. Inj., ECF No. 60. But IMLS's response to this injunction produced a new source of apportionment-related uncertainty. The Acting Director of IMLS

stated in a declaration that the agency would "require additional funding" from OMB to comply with the preliminary injunction because its "apportionment request" had been "based on compliance with" Executive Order 14238 and a "minimal staffing posture that ensured that . . . all statutorily required programs were serviced at a level compliant with the President's direction." Sonderling Decl. ¶ 14, Dkt. No. 63-1. This declaration created a dilemma: the dismantled agency indicated that it required cooperation from OMB to provide the full relief the plaintiff States were awarded. OMB was statutorily required to apportion the necessary funds. *See* GAO, *Institute of Museum and Library Services—Applicability of the Impoundment Control Act to Reduction of Agency Functions* 11-12 (Digest B-337375, June 16, 2025), https://tinyurl.com/2anhvt2j (explaining that these funds "are not eligible for deferral or rescission" and so "may not be withheld from obligation and expenditure"). But without timely apportionment data, Amici States could not know whether or to what degree OMB was apportioning the necessary funds, thus impairing Amici States' ability to ensure compliance and to structure their own spending and programming in expectation of receiving the withheld funds.

***Cuts to Energy and Infrastructure Funding.*** Since assuming office, the Trump Administration has engaged in a persistent effort to significantly cut back or eliminate existing energy and infrastructure programs. The Administration began by ordering the immediate pause of all disbursement of funds to various clean and

renewable energy projects and requiring all future disbursements to be approved by the OMB Director. *See Woonasquatucket River Watershed Council v. USDA*, 778 F. Supp. 3d 440, 479 (D.R.I. 2025); *New York v. Trump*, 769 F. Supp. 3d 119 146-47 (D.R.I. 2025); *Nat'l Council of Nonprofits v. OMB*, 775 F. Supp. 3d 100, 130-31 (D.D.C. 2025). After these early efforts were enjoined by several district courts, *see id.*, the Administration persisted by initiating a sweeping review of projects supporting renewable energy development and decarbonization. *See* Compl. ¶¶ 53-54, *California v. Wright*, No. 3:26-cv-1417 (N.D. Cal. Feb. 18, 2026), ECF No. 1 ¶¶ 53-54. And after Congress refused to adopt the Administration's budget proposal to implement certain funding rescissions, OMB announced that the Department of Energy was terminating nearly $8 billion in funding from energy projects in plaintiff States. *Id.* ¶¶ 6-7. The Administration has also withheld billions in unobligated funds meant to fund similar new projects that Congress refused to rescind.

Amici States have relied on OMB's apportionment website to monitor and challenge those unlawful withholdings. It has enabled Amici States to determine that, since October 2025, OMB has withheld funding for numerous projects and refused to provide the Department of Energy the authority to obligate certain funds. *Id.* ¶ 63. It has also helped Amici States determine that OMB refused to apportion the unobligated balances of funding dedicated to certain programs and has even diverted clean-energy funds to other purposes that Congress did not authorize. *Id.*

¶ 65. If Amici States lacked access to OMB's apportionment documents, they would have been severely hampered in their ability to monitor the unlawful withholding, underfunding, and diversion of swaths of funding for renewable-energy programs and energy-efficiency programs.

## II. OMB's Refusal To Provide Timely Apportionment Information Will Make It Difficult For States To Identify And Prevent Unlawful "Pocket Rescissions."

Reversing the order below will only worsen these problems. OMB has publicly taken the position that the Impoundment Control Act of 1974, 2 U.S.C. § 681 *et seq.*, allows for "pocket rescissions" of appropriated funds. *See* Letter from Mark Paoletta, Gen. Counsel, OMB, to Tom Armstrong, Gen. Counsel, GAO (Nov. 16, 2018) (OMB Pocket Rescission Letter), https://tinyurl.com/3e93pcvh.[1] Under this theory, the President could send a special message to Congress within the last 45 days of the fiscal year—that is, beginning on approximately August 15—proposing the rescission of federal funds. *See id.* at 1. In OMB's view, a rescission request allows the President to defer expenditures for 45 days, 2 U.S.C. § 683(b), and so a request sent in the *last* 45 days of the fiscal year would permit him to

---

[1] *See also* Jennifer Scholtes, *White House Floats New Funding Trick – And GOP Lawmakers Grimace*, POLITICO (June 20, 2025), https://tinyurl.com/5awfzb7h (OMB Director Russell Vought: "The very Impoundment Control Act itself allows for a procedure called pocket rescissions, later in the year, to be able to bank some of these savings, without the bill actually being passed . . . . It's a provision that has been rarely used. But it is there. And we intend to use all of these tools.").

withhold funds for the remainder of the fiscal year, at which point the appropriation would expire and effectively be rescinded, even if Congress failed to act on the rescission request. *See* OMB Pocket Rescission Letter at 1-2, 4.

This "pocket rescission" scheme is unlawful. *See Dept. of State v. Aids Vaccine Advoc. Coal.*, 146 S. Ct. 19, 21 n.1 (2025) (Kagan, J., dissenting from grant of stay application); Letter from Thomas H. Armstrong, Gen. Counsel, GAO, to Steve Womack, Chair, H. Comm. on the Budget, & John Yarmuth, Ranking Member, H. Comm. on the Budget, *Impoundment Control Act—Withholding of Funds through Their Date of Expiration*, B-330330, at 1 (Dec. 10, 2018), https://tinyurl.com/mrxswut5 (recognizing that the Impoundment Control Act "does not permit the withholding of funds through their date of expiration"). But if the district court's order here is reversed, the Administration could refuse to publicize timely apportionment data to make it impossible to determine whether OMB has complied with the court's order, furthering this unlawful plan. If the Administration sends a rescission request within the last 45 days of the year, OMB's failure to apportion the funds, or using some other apportionment control like a spend plan footnote, near the end of the fiscal year would be a clear signal that the Administration is carrying out a pocket rescission by refusing to spend the funds for the rest of the fiscal year. *See id.* at 6 (explaining that the Impoundment Control Act "requires that budget authority be made available in sufficient time to be prudently

obligated" before the end of the fiscal year). But by withholding timely apportionment information, the Administration may attempt to make it more difficult for Amici States or other affected entities to identify circumstances in which an Administration means to pocket-rescind funds before the fiscal year ends.

More broadly, the Administration will likely make other efforts to withhold appropriated funds from Amici States going forward. The Administration has not been hesitant to disregard Congress's instructions in the past. And the OMB Director has asserted a meritless but sweeping view of the Executive's unilateral authority to impound appropriated funds. *See* Scholtes *supra*, note 1. As Amici States' experience confirms, timely apportionment information will be critical in enabling affected entities to determine whether the Executive is "abiding by the laws governing the allocation of public funds" and to "hold the Executive Branch accountable if there is a misuse of"—or a wholesale refusal to apportion—"appropriated funds." *CREW v. OMB*, 791 F. Supp. 3d 29, 59 (D.D.C. 2025). That information will also enable Amici States and other affected entities to learn of the Administration's unlawful withholdings before, rather than after, such actions have begun to inflict serious harm on the States and their most vulnerable residents. The public interest therefore favors affirming the district court's injunction and preserving the disclosure website Congress mandated.

## CONCLUSION

This Court should affirm.

Respectfully submitted,

ANTHONY G. BROWN
Attorney General for Maryland

JULIA DOYLE
Solicitor General

/s/ Virginia A. Williamson
VIRGINIA A. WILLIAMSON
ADAM KIRSCHNER
MICHAEL DREZNER
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202
(410) 576-6584
vwilliamson@oag.maryland.gov

ROB BONTA
Attorney General for California

MICHAEL L. NEWMAN
Senior Assistant Attorney General

IRINA TRASOVAN
Supervising Deputy Attorney General

/s/ Lee Sherman
LEE SHERMAN
Supervising Deputy Attorney General
300 South Spring Street, Suite 1702
Los Angeles, CA 90013
(213) 269-6202
Lee.Sherman@doj.ca.gov

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

EMMA SIMSON
MITCHELL P. REICH
Senior Counsels to the Attorney General

BRYAN J. LEITCH
Assistant Attorney General

/s/ Amber D. Greenaway
AMBER D. GREENAWAY
Assistant Attorney General
D.C. Cir. Bar Number 64893
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6624 (office)
(202) 730-1472 (fax)
amber.greenaway@dc.gov

*Counsel for Amici States*

ANDREA JOY CAMPBELL
Attorney General for Massachusetts

May 2026

DAVID KRAVITZ
State Solicitor

ANNA LUMELSKY
Deputy State Solicitor

/s/ Katherine Dirks
KATHERINE DIRKS
Chief State Trial Counsel

VANESSA ARSLANIAN
State Trial Counsel
1 Ashburton Place
Boston, MA 02108
(617) 963-2277
katherine.dirks@mass.gov

FOR THE STATE OF ARIZONA

KRISTIN K. MAYES
Attorney General for Arizona
2005 N. Central Ave.
Phoenix, AZ 85004

FOR THE STATE OF COLORADO

PHILIP J. WEISER
Attorney General for Colorado
1300 Broadway 10th Floor
Denver, CO 80203

FOR THE STATE OF CONNECTICUT

WILLIAM TONG
Attorney General for Connecticut
165 Capitol Avenue
Hartford, CT 06106

FOR THE STATE OF DELAWARE

KATHLEEN JENNINGS
Attorney General for Delaware
820 N. French Street
Wilmington, DE 19801

FOR THE STATE OF HAWAII

ANNE E. LOPEZ
Attorney General for Hawaiʻi
425 Queen Street
Honolulu, HI 96813

FOR THE STATE OF ILLINOIS

KWAME RAOUL
Attorney General for Illinois
115 LaSalle Street
Chicago, IL 60603

FOR THE STATE OF MAINE

AARON M. FREY
Attorney General for Maine
6 State House Station
Augusta, ME 04333-0006

FOR THE STATE OF MICHIGAN

DANA NESSEL
Attorney General for Michigan
P.O. Box 30212
Lansing, MI 48909

FOR THE STATE OF MINNESOTA

KEITH ELLISON
Attorney General for Minnesota
102 State Capitol
75 Rev. Dr. Martin Luther King Jr. Blvd.
St. Paul, MN 55155

FOR THE STATE OF NEVADA

AARON D. FORD
Attorney General for Nevada
100 North Carson Street
Carson City, NV 89701

FOR THE STATE OF NEW JERSEY

JENNIFER DAVENPORT
Attorney General for New Jersey
25 Market Street
Trenton, NJ 08625

FOR THE STATE OF NEW MEXICO

RAÚL TORREZ
Attorney General for New Mexico
408 Galisteo Street
Santa Fe, NM 87501

FOR THE STATE OF NEW YORK

LETITIA JAMES
Attorney General for New York
28 Liberty Street
New York, NY 10005

FOR THE STATE OF NORTH CAROLINA

JEFF JACKSON
Attorney General for North Carolina
114 W. Edenton Street
Raleigh, NC 27603

FOR THE STATE OF OREGON

DAN RAYFIELD
Attorney General for Oregon
1162 Court Street NE
Salem, OR 97301-4096

FOR THE STATE OF WASHINGTON

NICHOLAS W. BROWN
Attorney General for Washington
P.O. Box 40100
Olympia, WA 98504

FOR THE STATE OF WISCONSIN

JOSHUA L. KAUL
Attorney General for Wisconsin
P.O. Box 7857
Madison, WI 53707-7857

## CERTIFICATE OF SERVICE

I certify that on May 4, 2026, this brief was electronically filed with the Clerk of the Court using the CM/ECF system. I further certify that all participants in this case are registered CM/ECF users and that service will be accomplished using the CM/ECF system.

/s/ Amber D. Greenaway
AMBER D. GREENAWAY

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) for an amici brief because it contains 3,532 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Amber D. Greenaway
AMBER D. GREENAWAY

# ADDENDUM

Excerpts of Transcript from July 22 Status Conference, *Maryland v. Corp. for Nat'l & Comm'y Serv.*, No. 25-cv-1363 (D. Md.)..................................Add. 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

STATE OF MARYLAND ET AL., ) CIVIL ACTION
) NO. DLB-25-1363
Plaintiffs, )
)
v. )
)
CORPORATION FOR NATIONAL AND )
COMMUNITY SERVICE ET AL., )
)
Defendants. )

TRANSCRIPT OF TELEPHONIC STATUS PROCEEDINGS
BEFORE THE HONORABLE DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE
TUESDAY, JULY 22, 2025; 11:12 A.M.
GREENBELT, MARYLAND

APPEARANCES:

FOR THE PLAINTIFF MARYLAND:

OFFICE OF THE ATTORNEY GENERAL - STATE OF MARYLAND
BY: KEITH M. JAMIESON, ESQUIRE
BY: VIRGINIA A. WILLIAMSON, ESQUIRE
200 St. Paul Place
Baltimore, Maryland 21202
(410) 576-6960

FOR THE PLAINTIFF DELAWARE:

DELAWARE DEPARTMENT OF JUSTICE
BY: IAN R. LISTON, ESQUIRE
820 N. French Street,
Wilmington, Delaware 19801
(302) 683-8875

Also Present: Joseph Borson, Esquire, DOJ

Renee A. Ewing, RMR, CRR - (301) 344-3227
Federal Official Court Reporter
6500 Cherrywood Lane, Suite 200
Greenbelt, Maryland 20770

***COMPUTER-AIDED TRANSCRIPTION OF STENOTYPE NOTES***

APPEARANCES (Continued):

FOR THE DEFENDANTS:

U.S. DEPARTMENT OF JUSTICE - CIVIL DIVISION
BY: PIERCE ANON, ESQUIRE
1100 L Street NW
Washington, DC 20005
(202) 305-7573

Your Honor, because it is at the tendering of these notice of grant awards, a legal term of art, that a legally binding obligation occurs.

So, although plaintiffs argue that it is a breach of service delivery, that, you know, these funds have not been transmitted to Commission Investment Fund programs, at the bottom, Your Honor, there is no contract or award yet. There is no legal obligation to actually promulgate the funds for these Commission Investment Fund grants. And that would similarly be the case for the contested programs that have expired and plaintiffs argue that we have some legal obligation to continue funding even though there is a complete absence of such an obligation, Your Honor.

THE COURT: I think I follow most of that. What's going on with OMB? Are they not disbursing the funds?

MR. ANON: Your Honor, I understand your question. To the extent that plaintiffs are concerned with another entity's actions, such as OMB, it is the Executive Branch's position that OMB deliberations on appropriations are privileged. Indeed, Your Honor, there are pending cases in DDC outlining the severity issue right now -- I think there is two such cases -- and we think it would be inappropriate to discuss at this juncture because of that privilege. And also not to mention --

THE COURT: Privilege?

responsibility that we have been able to glean from public recording from the defendant's responses so far.

THE COURT: Anything else?

MR. JAMIESON: One -- the one other thing I would note, Your Honor, in response to this privilege issue, I do know, from -- from looking at this with respect to other cases, that the -- the request from Congress that they are alluding to is actually a statute in OMB's Appropriations Act that requires OMB to post apportionment decisions on a public website.

OMB has taken the position since March that apportionment decisions, although they are legally binding on agencies, are somehow predecisional, and, therefore, are protected by privilege. The government accountability office sent a letter to OMB shortly afterward in the beginning of April, which we'd be happy to provide as supplemental authority if the Court is interested, that takes the position that the assertion of privilege is -- is not warranted and this information is not protected, and that, of course, is the issue in these two cases in DDC that are currently pending.

THE COURT: All right. Mr. Anon, let me ask you this: Does AmeriCorps have the fiscal year 2025 funds to distribute?

MR. ANON: I can say two things, and the answer may be frustrating, and I recognize that, is that, again, AmeriCorps has requested full funding. You know that. And --

and the other points that I believe may intersect with OMB, I am afraid I can't answer that because that would arise under the privilege defense that we are raising here. And I understand it's frustrating, it's a different version of the answer that I have given already, but it's the position the Justice Department is taking in this case and cases like it.

And I would briefly say to Mr. Jamieson's point about, you know, knowledge that maybe appeared to AmeriCorps and that OMB transferred over and that would, you know, perhaps not be under the privilege, well, I talked about this specifically with the agencies, and it's OMB's position that any deliberative, back-and-forth discussions regarding appropriations between our client and OMB would also necessarily fall under the asserted privilege defense. So, understanding it's maybe not the most satisfying answer, I'd have to keep leaning back on that, Your Honor.

THE COURT: Okay. Mr. Jamieson, where does this leave us as far as three weeks that the plaintiffs are requesting? I have essentially granted your motion for a status report or a conference. I believe the questions that you wanted answered have been answered, maybe not to your satisfaction, but I think they have been answered, and I think the -- this privilege that's been asserted for the first time on the record. So, Mr. Jamieson, what other relief are you requesting from the Court right now? I am disinclined to do